[Cite as *State v. Matthews*, 2011-Ohio-5066.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY   COUNTY

STATE OF OHIO                              :
                                           :        Appellate Case No. 24233
          Plaintiff-Appellee               :
                                           :        Trial Court Case No. 10-CR-1514
v.                                         :
                                           :
EDWARD L. MATTHEWS                         :        (Criminal Appeal from
                                           :         Common Pleas Court)
          Defendant-Appellant         :
                                           :

. . . . . . . . . . .

O P I N I O N

Rendered on the 30th day of September, 2011.

. . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. #0069384, Montgomery
County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O.
Box 972, 301 West Third Street, Dayton, Ohio 45422
          Attorneys for Plaintiff-Appellee

MARK FISHER, Atty. Reg. #0079508, Staton, Fisher & Conboy, LLP, 5613 Brandt Pike,
Huber Heights, Ohio 45424
          Attorney for Defendant-Appellant

. . . . . . . . .

HALL, J.

     {¶ 1}   On May 9, 2010, Garnet McCray picked up her daughter Jatana Stiver at the

apartment Stiver shared with Edward Matthews. Stiver got into the car and McCray saw that, underneath a heavy layer of makeup, her face was black-and-blue. The last time McCray had seen her, three days before when McCray dropped her off at the apartment, Stiver was uninjured. When McCray asked her what happened, Stiver tearfully recounted the beating she received at Matthews' hand soon after McCray had dropped her off on that previous occasion. At McCray's urging, Stiver went to the police. She gave police a key to their apartment and gave them permission to enter in order to arrest Matthews.

{¶ 2} A jury found Matthews guilty of domestic violence. The jury also found that Matthews had been convicted for domestic violence twice before. Matthews was convicted and sentenced to four years in prison. Matthews appealed.

{¶ 3} He now presents three assignments of error for our review.

{¶ 4} **First Assignment of Error**

{¶ 5} "The trial court erred when it did not order a new trial because the State failed to produce the taped phone conversations to Appellant during discovery."

{¶ 6} While in jail, Matthews had 150-160 telephone conversations, all of which were recorded. The prosecuting attorney claimed that he did not listen to all of them (how many he did listen to is unclear), and at trial the state played only one recording, the first conversation, between Matthews and Stiver. The state had provided Matthews with five recordings, including the one played at trial. The only time that Matthews raised the fact that the state did not provide a copy of all the recordings was just before that first conversation was played during the state's direct examination of Stiver.

{¶ 7} Just before the prosecuting attorney pressed the play button, defense counsel requested a sidebar. At the sidebar, counsel said to the judge:

{¶ 8} "Just for purposes of the record, Your Honor, I object to the playing of this audio recording for a variety of reasons. First, I'm not sure it's relevant as to what happened * * *.

{¶ 9} "Second, if you accept that it's relevant, the prejudicial values far outweigh the probative value.

{¶ 10} "In addition, Your Honor, there are a number of phone calls that occurred between this witness and–and Mr. Edwards (sic) over a period of, I'm going to estimate is 45 days. And I think if you place this phone call in the proper context, then that shows people all those phone calls to come in. Those phone calls have not been produced to me. And I think [I] have five or–phone calls that have been produced, so (indiscernible) as evidence of some sort of admission on behalf of Mr. Matthews, I would object." (Tr. 67).

{¶ 11} The trial judge decided to allow the state to play the recording based on the state's claim that Matthews admits to beating Stiver. The judge then continued:

{¶ 12} "THE COURT: And I have not heard the other phone calls. Certainly you can cross examine on her continuing to talk to him because it goes to her credibility, et cetera.

{¶ 13} "The State's under an obligation to turn over anything that's exculpatory or inculpatory and so, I'm certainly going to assume that you've represented that you've turned over all of that.

{¶ 14} "[STATE]: I've turned over everything that's relevant and I can't–there's no way I can listen to 160.

**{¶ 15}** "THE COURT: All right. You haven't listened to the rest of them?

**{¶ 16}** "[DEFENSE COUNSEL]: No, I haven't gotten–

**{¶ 17}** "THE COURT: Okay.

**{¶ 18}** "[DEFENSE COUNSEL]: –nearly–nearly close to what is out there.

**{¶ 19}** "THE COURT: Okay. So, I'm going to allow that. Your guy's not saying–he can't offer his own statements. It would be something that she said. So, if she would have had to have said something that was exculpatory.

**{¶ 20}** "And you're representing that that did not happen; is that correct?

**{¶ 21}** "[STATE]: No.

**{¶ 22}** "[DEFENSE COUNSEL]: Oh, no, Your Honor, it's all the issue. I'll deal with this on–

**{¶ 23}** "* * *

**{¶ 24}** "[DEFENSE COUNSEL]: I'll deal with it on cross, but just–just so we're clear, there are a number of conversations where–

**{¶ 25}** "* * *

**{¶ 26}** "[DEFENSE COUNSEL]: –this witness says what I believe to be exculpatory and make exculpatory statements. Everything from apparently she drafted an affidavit herself recanting what she claimed had happened–

**{¶ 27}** "* * *

**{¶ 28}** "[DEFENSE COUNSEL]: –to providing details to–to Mr. Matthews about what she intended to tell the prosecutor's office in terms of what happened. And said there were a number of things that come, whatever happens is my fault." (Tr. 68-69).

{¶ 29} A brief exchange between the judge and the prosecuting attorney follows, the court then reiterates its decision to allow the recording, and the sidebar ends. The recording was then played. A finder of fact listening to this conversation[1] could conclude that Matthews admits he did what he had been charged with doing–domestic violence against Stiver.[2]

{¶ 30} Matthews argues that, under the discovery rules, specifically, Crim.R. 16(B)(1), the state should have provided him with all 150-160 recorded conversations. Whether or not this is true, Matthews never asked the trial court to order the state to provide them, see Crim.R. 16(L)(1)[3]–neither before trial, with a motion to compel, nor during the sidebar–despite apparently knowing (based on his statements during the sidebar) that many more recordings existed than the state had provided. By failing to bring the issue before the trial court, Matthews failed to preserve it for appeal.

{¶ 31} Matthews also relies on Evid.R. 106, which provides: "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which is

---

[1] A transcript of the recording is not in the record, but a video and sound recording of the trial is. We listened to the recording as it was played at trial.

[2] The prosecuting attorney described it to the trial court this way:

"Your Honor, this is the first phone call, the first indication that's from the defendant and victim when they're arrested. It's the most telling in he apologizes to her for what happened.

"He tells her he's going to get help. He told her as soon as he gets out, that's the first thing he's going to do is get help. It won't happen again." (Tr. 67).

[3] This subdivision provides: "The trial court may make orders regulating discovery not inconsistent with this rule. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence, the material not disclosed, or it may make such other order as it deems just under the circumstances."

otherwise admissible and which ought in fairness to be considered contemporaneously with it." While defense counsel did not expressly cite this rule to the trial court, echos of the rule can be heard in counsel's sidebar argument.

{¶ 32} This rule did not apply. Evid.R. 106 is merely a rule that concerns the timing of evidence that is otherwise admissible: "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which is otherwise admissible and which ought in fairness to be considered contemporaneously with it." The rule codifies the common-law "rule of completeness." See *Beech Aircraft Corp. v. Rainey* (1988), 488 U.S. 153, 172, 109 S.Ct. 439, 102 L.Ed.2d 445 (saying that this common-law rule "underlies Federal Rule of Evidence 106"), and Staff Notes to Evid.R. 106 (saying that Ohio Rule of Evidence 106 "merely codifies the better common law tradition"), citing McCormick, Evidence (2 Ed.1972) Section 56.[4] Under this rule, an adverse party may introduce any other document or part thereof "when one party has made use of a portion of a document, such that misunderstanding or distortion can be averted only through presentation of another portion." *Beech Aircraft*, at 172, citing 7 Wigmore, Evidence (Chadbourn Rev.1978) 653, Section 2113.

{¶ 33} Here the state's purpose for playing the recording was Matthews's admission. Defense counsel told the trial court that during other conversations between Matthews and Stiver, Stiver said things that exculpate Matthews. Matthews fails to explain what misunderstanding might have occurred because Stiver's later statements were not admitted

---

[4] Ohio's Evid.R. 106 and Federal Rule of Evidence 106 are identical except that the federal rule does not include the phrase "which is otherwise admissible."

contemporaneous with Matthews's admission. And we do not see how *Stiver's* allegedly exculpatory statements, made in later conversations, would prevent the jury from misunderstanding *Matthews's* admission.

{¶ 34} Matthews never moved the trial court for a new trial. See Crim.R. 33(B) (saying in part that an "[a]pplication for a new trial shall be made by motion"). And we find no grounds on which one should have been granted.

{¶ 35} The first assignment of error is overruled.


{¶ 36} **Second Assignment of Error**

{¶ 37} "The court should have excluded the recorded phone conversation because it was obtained as a result of an unlawful arrest."

{¶ 38} Matthews waived for appeal the issue he raises here. A defendant must move the trial court, before trial, to suppress evidence that the defendant thinks was illegally obtained. Crim.R. 12(C)(3) ("The following must be raised before trial: * * * Motions to suppress evidence * * * on the ground that it was illegally obtained. Such motions shall be filed in the trial court only."). "The failure to move [timely] * * * for the suppression of evidence on the basis of its illegal obtainment constitutes a waiver of the error." *State v. Wade* (1978), 53 Ohio St.2d 182, at paragraph three of the syllabus, vacated on other grounds *Wade v. Ohio* (1978), 438 U.S. 911, 98 S.Ct. 3138, 57 L.Ed.2d 1157; *State v. F.O.E. Aerie 2295* (1988), 38 Ohio St.3d 53, at paragraph two of the syllabus ("Failure to file a motion to suppress pursuant to Crim.R. 12(B)(3) prior to the submission of a stipulation of facts to the trial court constitutes waiver of any objection to the admissibility of seized evidence.").

Matthews never moved the trial court to suppress the recorded phone conversation played at trial, nor did he ever raise the legality of his arrest before the trial court.

{¶ 39} While we may "for good cause shown [] grant relief from the waiver, Crim.R. 12(H), we will not do so here. Matthews gives no reason for why he did not move to suppress the recording before trial, and no reason is apparent in the record. Furthermore, the arrest was not unlawful. Matthews argues that his arrest was unlawful under the Fourth Amendment because the police entered his home and arrested him without a warrant. Although the Fourth Amendment's warrant requirement generally prohibits warrantless entry into a person's home to make an arrest, the requirement does not apply when voluntary consent has been obtained from a third party with common authority over the premises. *Illinois v. Rodriguez* (1990), 497 U.S. 177, 181, 110 S.Ct. 2793, 111 L.Ed.2d 148 (Internal citations omitted.). "Common authority * * * rests [] on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." *U.S. v. Matlock* (1974), 415 U.S. 164, 171 n.7, 94 S.Ct. 988, 39 L.Ed.2d 242.

{¶ 40} Stiver had common authority over the apartment she shared with Matthews. She resided in the apartment with Matthews and had a key to it. Stiver gave her key to police and gave them permission to enter. There was no constitutional illegality.

{¶ 41} The second assignment of error is overruled.

**Third Assignment of Error**

{¶ 42} "The trial court erred to the prejudice of Appellant when it permitted Ms. McCray to testify to statements made to her by her daughter."

{¶ 43} Three days after the beating, Stiver's mother, Garnet McCray, picked her up. This was the first time since the beating that Stiver left the apartment. McCray testified that, when Stiver got into her car, she saw that "[h]er eye was black. Her lip was busted. She had a bruise on the side of her cheek. She had put a lot of make-up on trying to hide it." (Tr. 109). The prosecuting attorney then asked: "At that point did you ask Jatana what happened?" (Tr. 109).

{¶ 44} "A Yes, I did.

{¶ 45} "* * *

{¶ 46} "Q Did she cry at all?

{¶ 47} "A Yes.

{¶ 48} "Q Was she upset?

{¶ 49} "A Yes.

{¶ 50} "Q Did she tell you what happened?

{¶ 51} "A Yes.

{¶ 52} "Q Did she tell you who did it to her?

{¶ 53} "A Yes.

{¶ 54} "Q Did she tell you–what did she tell you about those injuries? Were they accidents?

{¶ 55} "A No. He deliberately did it. She was trying to get away, get out of the house. And he blocked the one door. She went to the other door and he blocked it.

**{¶ 56}** "Then he grabbed her by the back of the neck, threw her on the floor and started kicking her.

**{¶ 57}** "* * *

**{¶ 58}** "Q When you say 'he,' who are you referring to?

**{¶ 59}** "A Edward.

**{¶ 60}** "Q The defendant you identified earlier?

**{¶ 61}** "A Yes."

**{¶ 62}** (Tr. 109-110). The trial court overruled Matthews's hearsay objection and motion to strike the testimony.

**{¶ 63}** The state argues that Stiver's statements in McCray's testimony are not hearsay because they constitute prior statements by a witness. "A statement is not hearsay if: * * * [t]he declarant testifies at trial or hearing and is subject to cross-examination concerning the statement, and the statement is * * * consistent with declarant's testimony and is offered to rebut an express or implied charge against declarant of recent fabrication or improper influence or motive." Evid.R. 801(D)(1)(b). It does not appear that the state's purpose in asking McCray about what Stiver told her was to rebut any charge that Stiver had recently fabricated her testimony. The more likely explanation is that the state simply sought to introduce more evidence that Matthews committed the offense for which he was being tried.

**{¶ 64}** The state also contends that Stiver's statements in McCray's testimony are admissible as excited utterances, an exception to the hearsay rule. An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Evid.R. 803(2). Under this exception, a

trial court may admit testimony about a declarant's out-of-court statement if the court reasonably finds (1) that there was some startling occurrence that produced a nervous excitement in the declarant that caused her spontaneously and unreflectively to sincerely express her actual impressions and beliefs, (2) that the statement was made while the declarant was still in a state of nervous excitement, (3) that the statement related to the startling occurrence or its circumstances, and (4) that the declarant personally observed the matters asserted. *State v. Taylor* (1993), 66 Ohio St.3d 295, 300-301 (Citation omitted.). The Tenth District has said that statements made by a victim to a testifying witness a few days after the startling event are "'[not] the product of the requisite impulse and spontaneity,'" required by the excited utterances exception, when they are "'responses elicited by direct questions.'" *Harr*, quoting *State v. Bowles* (April 28, 1998), Franklin App. No. 97APA09-1213. Rather, such statements "constitute[] narrative hearsay accounts beyond the purview of the excited utterance exception." Id. We note, too, that "[m]erely being 'upset' [] does not meet the standard for admissibility under Evid.R. 803(2)." *Taylor*, at 303. Whether a hearsay declaration should be admitted under the excited-utterance exception is within the trial court's discretion, guided by these factors. See *Roach v. Roach* (1992), 79 Ohio App.3d 194, 205, citing *State v. Boston* (1989), 46 Ohio St.3d 108.

{¶ 65} At issue here is a second factor, the trial court's implicit finding that, when Stiver told her mother that Matthews beat her, Stiver was still sufficiently under the influence of the nervous excitement undoubtedly produced by the beating three days before. The Ohio Supreme Court has said that "[t]here is no *per se* amount of time after which a statement can no longer be considered to be an excited utterance." (Emphasis sic.) *Taylor*, at 303. Rather,

the Court has said, "[t]he central requirements are that the statement must be made while the declarant is still under the stress of the event and the statement may not be a result of reflective thought." *Taylor*, at 303. "Therefore the passage of time between the statement and the event is relevant but not dispositive of the question. '[E]ach case must be decided on its own circumstances, since it is patently futile to attempt to formulate an inelastic rule delimiting the time limits within which an oral utterance must be made in order that it be termed a spontaneous exclamation.'" *Taylor*, at 303, quoting *State v. Duncan* (1978), 53 Ohio St.2d 215, 219-220.

{¶ 66} "Whenever the prosecution offers hearsay evidence in a criminal case, the accused's Sixth Amendment right to confront his accusers is directly implicated. Hearsay exceptions should be narrowly construed by the trial court when the constitutional rights of the accused are directly affected by the admission of the hearsay testimony." *State v. Harr*, 158 Ohio App.3d 704, 2004-Ohio-5771, at ¶140. Here we think that the trial court should not have admitted  McCray's testimony about what Stiver told her. The violence had occurred three days before, and Stiver's statements were responses to McCray's questions. Stiver's statements were merely narrative accounts of what Matthews did to her, and she was understandably upset by the events. The situation here does not support finding that Stiver was sufficiently under the influence of a nervous excitement to constitute an excited utterance.

{¶ 67} Nevertheless, we agree with the state's argument that Matthews was not prejudiced by this error. Ample independent evidence existed of Matthews's guilt: in addition to Matthews's recorded admission played at trial, Stiver herself testified that Matthews beat

her. We conclude that the outcome of the trial would not have been any different absent this testimony from McCray. The admission of this hearsay, while error, was harmless. See Crim.R. 52(A).

**{¶ 68}** The third assignment of error is overruled.

**{¶ 69}** We have overruled all the assignments of error presented by Matthews. The judgment of the trial court is therefore affirmed.

. . . . . . . . . . . . . .

FAIN and DONOVAN, JJ., concur.


Copies mailed to:

Mathias H. Heck, Jr.
Andrew T. French
Mark Fisher
Hon. Mary K. Huffman