[Cite as *State v. Barnes*, 2020-Ohio-3184.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                                    :

    Plaintiff-Appellee,                   :

                               Nos. 108857, 108858, and 109321

    v.                                           :

DAVID BARNES, JR.,                               :

    Defendant-Appellant.                  :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 4, 2020

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-18-635113-A, CR-19-637121-A, and CR-19-637984-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Megan Helton, Assistant Prosecuting Attorney, *for appellee.*

Michael P. Maloney, *for appellant.*

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Defendant-appellant, David Barnes, Jr., appeals from the trial court's judgment finding him guilty of felonious assault and domestic violence and sentencing him to an aggregate term of eleven years in prison. Finding no merit to the appeal, we affirm.

## I.  Background

{¶ 2}  Barnes was indicted in three cases regarding events that occurred on June 16, 2018, December 3, 2018, and March 8, 2019.  All events involved the same victim:  K.B., Barnes's wife of nearly 30 years.

{¶ 3}  In Cuyahoga C.P. No. CR-18-635113, Barnes was indicted on one count of felonious assault in violation of R.C. 2903.11(A) and one count of domestic violence in violation of R.C. 2919.25(A).

{¶ 4}  In Cuyahoga C.P. No. CR-19-637121, Barnes was indicted on one count of attempted rape in violation of R.C. 2923.02/2907.02(A)(2); one count of kidnapping in violation of R.C. 2905.01(A)(4); and one count of domestic violence in violation of R.C. 2919.25(A).  The attempted rape and kidnapping counts were dismissed without prejudice prior to trial.

{¶ 5}  In Cuyahoga C.P. No. CR-19-637984, Barnes was indicted on one count of domestic violence in violation of R.C. 2919.25(A).

{¶ 6}  Barnes pleaded not guilty, and the cases proceeded to trial, at which K.B. did not testify.  Prior to trial, the trial court held a hearing on the state's Evid.R. 804(B)(6) motion.  At the hearing, the state played several jailhouse phone calls between Barnes and his mother and Barnes and K.B. that demonstrated Barnes had attempted to keep K.B. from appearing at trial and hide her location from the state. After reviewing the phone calls, the trial court granted the state's motion.

{¶ 7}  With respect to CR-637121, Cleveland police officer Colbert Stadden testified that on June 16, 2018, he responded to 3716 East 151st Street regarding a

report of a female who had been assaulted.  Stadden testified that when he arrived, K.B. told him that she and Barnes had been having a drink together when Barnes said he wanted oral sex.  K.B. said she told Barnes to take a shower but he refused.  K.B. said that when she then refused oral sex, Barnes became angry, pulled her hair, pulled her down to the ground, pushed his knee into her chest, grabbed her jaw, and then punched her once or twice.  K.B. told Stadden that a neighbor who heard her screaming came to the door and told Barnes to get off her, at which point he fled.  Stadden testified that he observed redness and swelling on K.B.'s cheek and around her mouth.  The state then played for the jury body camera footage of K.B.'s interaction with Officer Stadden.

{¶ 8}  With respect to CR-635113, Cleveland police officer Vicki Przybylski testified that late in the evening of December 3, 2018, she responded to 3716 East 151st Street regarding a report of a female with a head injury.  Officer Przybylski testified that she spoke with K.B. when she arrived, and that K.B. was scared and shaking and had blood on the back of her head.  Officer Przybylski said that K.B. told her that Barnes had pushed her to the ground.  The state then played for the jury footage from Officer Przybylski's body camera reflecting her interaction with K.B.

{¶ 9}  Dr. Jon Schrock, an emergency room physician at MetroHealth Medical Center, testified that he treated K.B. at the emergency room at 12:30 a.m. on December 4, 2018.  He identified state's exhibit No. 7 as a medical report of her treatment.  The report reflected that K.B. told emergency room personnel that her husband had pushed her out of the house, and she hit her head on the concrete.  Dr.

Schrock testified that K.B. said she did not feel safe at home and was afraid of someone hurting her. Dr. Schrock said he closed K.B.'s wound to the back of her head with five stitches.

{¶ 10} Regarding CR-637984, Cleveland police officer Christopher Randolph testified that on March 8, 2019, he responded to the area of East 81st Street and Hough Avenue regarding a domestic violence complaint. He said that when he arrived, he met with K.B., who told him that she had been in a car with Barnes when they began arguing. K.B. told Officer Randolph that Barnes became angry, pulled her wig off — taking pieces of her own hair with it — then punched her in the face several times, and finally threw her out of the moving vehicle. Officer Randolph testified that K.B.'s lip was bleeding and swollen, she had blood on her clothes, and there were noticeable pieces of hair missing from her head. The state then played footage from Officer Randolph's body camera reflecting K.B. telling Officer Randolph and his partner what had happened. The video also reflected K.B. identifying Barnes as the perpetrator from a picture the police showed to her. Officer Randolph testified that when the police apprehended Barnes a short time later, he noticed what appeared to be a piece of K.B.'s hair on his pant leg.

{¶ 11} The jury subsequently found Barnes guilty of all charges (one count of felonious assault and three counts of domestic violence), and the trial court sentenced him to an aggregate term of eleven years' incarceration. This appeal followed.

## II. Law and Analysis

### A. Confrontation Clause and Hearsay Issues

{¶ 12} In his first assignment of error, Barnes contends that the trial court erred in admitting the testimony of the police officers regarding what K.B. told them about the incidents of abuse by Barnes, and in allowing footage from the body cameras of the police officers to be shown to the jury. He contends that these were testimonial out-of-court statements by K.B., and because she never appeared at trial, he was deprived of his constitutional right to confront her.

{¶ 13} In his third assignment of error, Barnes contends that the trial court erred in admitting the police officers' testimony and the body camera footage into evidence because both were inadmissible hearsay. We consider these errors together because they are related.

{¶ 14} The Sixth Amendment to the U.S. Constitution provides that "in all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." In *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court held that the admission of a testimonial out-of-court statement of a witness who does not appear at trial violates the Confrontation Clause unless the witness is unavailable to testify and the defendant had a prior opportunity to cross-examine the witness.

{¶ 15} Evid.R. 801 protects the confrontation right by prohibiting the use of hearsay statements, i.e., statements other than those made by the declarant while testifying at trial offered in evidence to prove the truth of the matter asserted.

Hearsay statements are not admissible at trial unless subject to an exception. Evid.R. 801 and 802.

{¶ 16} Evid.R. 804(B)(6) is one such exception. Under Evid.R. 804(B)(6), regarding forfeiture by wrongdoing, a statement offered against a party is not excluded by the hearsay rule "if the unavailability of the witness is due to the wrongdoing of the party for the purpose of preventing the witness from attending or testifying." To qualify for this exception, the state must show by a preponderance of the evidence that (1) the defendant's wrongdoing resulted in the witness's unavailability; and (2) "one purpose was to cause the witness to be unavailable at trial." *State v. Hand*, 107 Ohio St.3d 378, 2006-Ohio-18, 840 N.E.2d 151, ¶ 84.

{¶ 17} Before admitting the testimony and evidence to which Barnes objects, the trial court conducted an evidentiary hearing outside the presence of the jury. It heard recorded jailhouse phone conversations between Barnes and his mother, Annie Barnes, in which Barnes and his mother devised a plan to get K.B. away from her current residence in order to conceal her location from the state. In one of the conversations, Barnes asked his mother to deliver a letter to K.B. about the plan and to pay money to a landlord for an apartment where K.B. could stay because, as Barnes told his mother, "I just need her to be away from where she at, so I gotta take a chance." In another conversation, Barnes told his mother, "I need her to stay away." The court also heard a jailhouse call between Barnes and K.B. in which Barnes told K.B. "just don't come down here, okay?" — to which she responded "okay."

{¶ 18} The state argued that the jailhouse phone conversations indicated that Barnes was actively trying to conceal K.B.'s whereabouts so the state would not know where she was, and to convince her not to appear for trial. The state asserted that Barnes's efforts had in fact been successful because although the state had left subpoenas for K.B. at the two addresses it had for her, she had not responded to either subpoena. After considering the jailhouse phone conversations, the trial court granted the state's Evid.R. 804(B)(6) motion.

{¶ 19} The decision to admit or exclude evidence at trial lies within the sound discretion of the trial judge, and the court's decision will not be reversed absent an abuse of discretion. *State v. Gale*, 8th Dist. Cuyahoga No. 94872, 2011-Ohio-1236, ¶ 12. Barnes makes no argument that the trial court abused its discretion in admitting the evidence under Evid.R. 804(B)(6); rather, he argues that the admission of the police officers' testimony and body camera footage violated his right under the Confrontation Clause to confront K.B. However, "*Crawford* explicitly preserved the principle that an accused has forfeited his confrontation right where the accused's misconduct is responsible for a witness's unavailability." *Hand*, 107 Ohio St.3d 378, 2006-Ohio-18, 840 N.E.2d 151, at ¶ 105, citing *Crawford*, 541 U.S. at 62, 124 S.Ct. 1354, 158 L.Ed.2d 177, and *Reynolds v. United States*, 98 U.S. 145, 158, 25 L.Ed. 244 (1879) (if a witness is unavailable because of the defendant's own conduct, "he is in no condition to assert that his constitutional rights have been violated.") *See also State v. Brown*, 8th Dist. Cuyahoga No. 50505, 1986 Ohio App. LEXIS 6567, 11-12 (Apr. 4, 1986) ("An accused cannot rely on the

Confrontation Clause to preclude extrajudicial evidence from a source he obstructs.")

{¶ 20} After listening to the jailhouse phone calls between Barnes and his mother, the trial court determined that Barnes and his mother had actively engaged in wrongdoing with the purpose of making K.B. unavailable for trial. As a result, Barnes forfeited his constitutional right of confrontation.

{¶ 21} Likewise, Barnes's wrongdoing forfeited any claim that the police officers' testimony regarding what K.B. told them and the body camera footage of their interactions with her was inadmissible hearsay. Under Evid.R. 804(B)(6), a statement offered against a party is not hearsay if the unavailability of the witness is due to the party's wrongdoing. The trial court found that K.B.'s unavailability for trial was the result of Barnes's wrongdoing. Accordingly, the statements against Barnes offered by the police officers and contained in the body camera footage were properly admitted under Evid.R. 804(B)(6) as an exception to the hearsay rule. The first and third assignments of error are overruled.

## B. Authentication of Jailhouse Phone Calls

{¶ 22} In his second assignment of error, Barnes contends that the trial court committed reversible error in admitting into evidence recorded phone calls made by him while he was in the Cuyahoga County Jail awaiting trial. He contends that the state failed to establish that he made the calls and, therefore, the calls were inadmissible because they were not properly authenticated.

**{¶ 23}** Barnes raised no objection to the admission of the jailhouse calls at trial and, accordingly, we review this assignment of error under the plain error standard. *State v. Watkins*, 8th Dist. Cuyahoga No. 77051, 2000 Ohio App. LEXIS 4087, 17 (Sept. 7, 2000). Plain error is an obvious error or defect in the trial court proceeding that affected the outcome of the case. *In re J.G.*, 2013-Ohio-583, 986 N.E.2d 1122, ¶ 10 (8th Dist.), citing *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240. Courts are to take notice of plain error with the "utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. The burden of demonstrating plain error is on the party asserting the error. *State v. McFeeture*, 2015-Ohio-1814, 36 N.E.3d 689, ¶ 84 (8th Dist.). Barnes fails to demonstrate any error, plain or otherwise.

**{¶ 24}** The requirement of authentication or identification of demonstrative evidence as a condition precedent to admissibility is satisfied by introducing "evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid.R. 901(A). The "evidence to support a finding" standard is not rigorous, however, and the threshold of admissibility articulated in the rule is "quite low." *State v. Thompson*, 8th Dist. Cuyahoga No. 96929, 2012-Ohio-921, ¶ 27; *State v. Bell*, 12th Dist. Clermont No. CA2008-05-044, 2009-Ohio-2335, ¶ 17. "Because 'conclusive evidence as to authenticity and identification need not be presented to justify allowing evidence to reach the jury,' the evidence required to establish authenticity need only be sufficient to afford a rational basis for a jury to

decide that the evidence is what its proponent claims it to be." *Thompson* at ¶ 28, quoting *Bell* at *id.*

{¶ 25} Thus, in this case, to establish that the audio recordings were jailhouse conversations between Barnes, his mother, and K.B., the state was not required to "prove beyond any doubt that the evidence [was] what it purport[ed] to be." *Thompson* at ¶ 29, citing *State v. Moshos*, 12th Dist. Clinton No. CA2009-06-008, 2010-Ohio-735, ¶ 12. Instead, the state needed only to demonstrate a "reasonable likelihood" that the recordings were authentic. *Thompson* at *id.*, citing *Bell* at ¶ 30. Such evidence may be supplied by, but is not limited to, the testimony of a witness with knowledge, voice identification, evidence that a call was made to the number assigned at the time by the telephone company to a particular person, or evidence that a process or system was used that produced an accurate result. Evid.R. 901(B)(1), (5), (6), and (9).

{¶ 26} Corrections Officer Andrick Hudson testified at trial that each inmate is assigned a unique personal identification number ("PIN") to input when making phone calls from the jail. He testified further that the calls are recorded through the jail's Securus system, and that call logs showing calls made by each inmate's PIN number are created by the system. He testified that state's exhibit No. 31 was a report of calls made by Barnes's PIN, and that many of the calls reflected on the report were made to K.B.'s phone number.

{¶ 27} Barnes contends that this authentication was insufficient under Evid.R. 901(B)(9) to demonstrate that he actually made the calls, however, because

Corrections Officer Hudson acknowledged that inmates sometimes use each other's PIN numbers if they do not have money to make a call, or if they are trying to keep the corrections officers from knowing they made a phone call. Barnes's argument is without merit.

{¶ 28} Evid.R. 901(B)(5) provides for authentication of recorded phone conversations by voice identification "whether heard firsthand or through mechanical or electronic transmission or recording." In her testimony, Barnes's mother, Annie, admitted to receiving calls from Barnes while he was in jail, and identified her voice, Barnes's voice, and K.B.'s voice on the recordings. Annie also identified K.B.'s telephone number, which was the same number Corrections Officer Hudson testified was reflected numerous times on state's exhibit No. 31. Annie's identification of both her voice and Barnes's voice and her identification of K.B.'s telephone number, coupled with the testimony of Corrections Officer Hudson, were sufficient to constitute a "reasonable showing" of authenticity. Whether the voice heard on the calls was indeed Barnes was a question of fact for the jury to determine. Accordingly, the trial court did not abuse its discretion in admitting the recordings into evidence.

{¶ 29} The second assignment of error is overruled.

{¶ 30} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, JUDGE

EILEEN T. GALLAGHER, A.J., and
MARY EILEEN KILBANE, J., CONCUR