[Cite as *State v. Smith*, 2026-Ohio-552.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                                     No. 111274

    v.                                   :

GARRY SMITH,                           :

    Defendant-Appellant.       :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED, VACATED, AND REMANDED
**RELEASED AND JOURNALIZED:** February 13, 2026

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-20-651674-A and CR-20-655568-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Daniel T. Van, Assistant Prosecuting Attorney, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Michael V. Wilhelm, Assistant Public Defender, *for appellant.*

EILEEN A. GALLAGHER, P.J.:

{¶ 1} This matter is before us on remand from the Ohio Supreme Court, after it affirmed, in part, and reversed, in part, our decision in *State v. Smith*, 2023-Ohio-

603 (8th Dist.) ("*Smith I*"). The Ohio Supreme Court affirmed our decision as related to Smith's convictions in Cuyahoga C.P. No. CR-20-655568-A and reversed our decision as related to Smith's convictions in Cuyahoga C.P. No. CR-20-651674-A. *State v. Smith*, 2024-Ohio-5745, ¶ 57 ("*Smith II*").

{¶ 2} In Cuyahoga C.P. No. CR-20-651674, Garry Smith ("Smith") was charged with two counts of domestic violence for allegedly assaulting B.B. on March 21, 2020. In CR-20-655568, Smith was charged with two counts of assault and one count of domestic violence related to an alleged incident involving B.B. on December 26, 2020. The two cases against Smith were tried together to the bench.

{¶ 3} Per the remand order, this opinion concerns only CR-20-651674 and the incident that allegedly occurred on March 21, 2020. For a full recitation of the facts of this case, see *Smith I*.

{¶ 4} At issue is the admissibility at Smith's trial of a police body-camera video (the "Video") containing out-of-court statements made by B.B. The Video was recorded by Cleveland police officer Brian Soucek's ("Soucek") body camera while B.B. was in an ambulance speaking with two EMTs when Soucek and another police officer approached. The State introduced the Video and, thus, B.B.'s statements, through Soucek's testimony at Smith's trial.

{¶ 5} B.B. did not testify at Smith's trial and Smith objected to the admissibility of the Video on two grounds: it violated the rule against hearsay and it violated his right to confront witnesses against him under the Sixth Amendment's Confrontation Clause.

{¶ 6} The trial court ruled that the Video was admissible as evidence against Smith finding that it did not violate the Confrontation Clause and it fell under the excited-utterance exception to the rule against hearsay. A bench trial ensued and the court found Smith guilty of all charges.

{¶ 7} Smith appealed and we reversed his convictions in CR-20-651674, determining that B.B.'s out-of-court statements were testimonial in nature and, because she did not testify at Smith's trial, the admission of her statements via the Video violated the Confrontation Clause. *Smith I* at ¶ 101. We concluded the entire video, which ran eight minutes and 33 seconds, was inadmissible. We further concluded that its admission at trial was prejudicial, rather than harmless because, without the Video, the remaining evidence did not identify Smith, beyond a reasonable doubt, as the person who allegedly assaulted B.B. on March 21, 2020. *Id.* at ¶ 107.

{¶ 8} In *Smith II*, the Ohio Supreme Court concluded that "[o]nly those statements that B.B. made in response to . . . Soucek's questions should have been excluded" based on violations of the Confrontation Clause. *Smith II* at ¶ 56. The *Smith II* Court concluded that the statements B.B. made in response to the EMTs' questions "were nontestimonial and the admission of those statements at Smith's trial did not violate Smith's right to confrontation." *Id.* at ¶ 55.

{¶ 9} In reversing, in part, our opinion in *Smith I*, the Ohio Supreme Court has directed us on remand to "determine whether any of the statements B.B. made in response to the EMTs' questions (i.e., the nontestimonial statements) were

inadmissible hearsay, thereby addressing Smith's second assignment of error." *Smith II* at ¶ 57. Additionally, the Ohio Supreme Court instructed that, "[a]fter making that determination," we "revisit [our] harmless-error determination and address Smith's third, fourth, and fifth assignments of error relating to the March 21, 2020 incident, as necessary." *Id.*

## I. Procedural History Regarding the Issue of Hearsay

### A. Trial Court

{¶ 10} Smith had filed a motion in limine requesting, in part, that the court direct the State to refrain, at trial, from: "Any mention of and or use and attempt to identify Gary [sic] Smith and testimony by the victim from police body camera recordings without having the victim actually testify in court . . ." as being in violation of the Confrontation Clause. Smith further argued in this motion that the admission of this evidence would be "hearsay and clearly violate the defendant's right to cross examine the victim."

{¶ 11} Smith filed a second motion in limine concerning the admissibility of B.B.'s "medical records that contain the HISTORY of the alleged offense(s)" based on hearsay. The State did not file an opposition brief to either of Smith's motions in limine. After the trial court denied both of Smith's motions in limine, Smith stipulated to the authenticity of B.B.'s medical records and this second motion in limine is not at issue upon remand.

{¶ 12} Prior to trial, the court held a hearing on pending motions, including Smith's first motion in limine. The majority of argument at this hearing concerned

the Confrontation Clause, which is not at issue under our remand order. We note that the trial court ultimately ruled that B.B.'s statements were nontestimonial in nature and admitted the entire Video at trial finding no Confrontation Clause violation because the police were responding to an emergency situation.

{¶ 13} As to the hearsay challenge, the State argued at the motion hearing that the Video was admissible under the hearsay exception "to describe [B.B.'s] physical condition." The State also argued that the Video was admissible because B.B. was "still under the excitement and stress of the event when the police arrive, so there are numerous hearsay exceptions that those would fall under." Smith, on the other hand, argued that B.B.'s statements were inadmissible hearsay. The court stated, on the record, that "there may be an excited-utterance hearsay exception" and reserved ruling on Smith's motion.

{¶ 14} During trial, the State introduced the Video through Soucek. The court overruled Smith's objection, explaining that the evidence was "nontestimonial in nature and admissible under the hearsay exception."

{¶ 15} After testimony concluded, the State moved to have the Video admitted as a trial exhibit. Smith objected, stating that the Video "denies me the right of confrontation." The court overruled the objection because of "the nontestimonial nature of the statements being admitted under an exited utterance hearsay exception."

## B. Appellate Court

{¶ 16} In his first appeal of this case, Smith raised five assignments of error, the second of which pertains to hearsay and the Video. Specifically, Smith argued that the "statements in the March 2020 body camera recording . . . violate the rules of evidence and [are] inadmissible on that basis . . . ." Smith further argued that "no hearsay exception . . . applies in this situation." According to Smith, "B.B. was no longer in the midst of an emergency and her statements do not qualify as excited utterances . . . ."

{¶ 17} Smith's appellate brief states that "while B.B. was simultaneously giving the EMTs pertinent medical information, she was also relaying to the police what was her version — at the time — of how she became injured." Smith concluded that "B.B.'s statements recorded on the police body camera were hearsay not subject to any exception and should not have been admitted."

{¶ 18} In its appellate brief, the State argued that the Video falls under the excited-utterance and present-sense-impression exceptions to the hearsay rule. The State's argument as to why follows:

> Officer Soucek testified that he was called for . . . a female assault. He further testified that the victim, B.B., was being escorted into the EMS when he arrived. Officer Soucek described that the right side of the victim's face was very swollen, her eye was swollen shut, and that some of her hair had been ripped out of her head and you could see spots of blood and glue where it had been ripped out. Officer Soucek testified that at the hospital, B.B. mentioned that defendant had a weapon on him.
>
> . . .

The record shows that officers arrived shortly after the incident occurred. The victim was being escorted into the EMS wagon when police arrived.

{¶ 19} Smith's reply brief responded only to the State's arguments concerning the excited-utterance and the present-sense-impression exceptions to the rule against hearsay under his second assignment of error. Specifically, Smith argued that the "more time between the event and the statement, the more time the declarant has had to reflect on it, thereby detracting from the statement's trustworthiness." According to Smith, the time between the assault and B.B.'s statements "was enough time for B.B. to have left the scene of the incident, call for help from another place, have help arrive, and be in the process of receiving medical treatment at . . . the time the officer's body camera begins recording B.B.'s statements."

{¶ 20} In *Smith I,* this court found B.B.'s statements to police in the Video to be testimonial under the Confrontation Clause, and thus inadmissible, because B.B. did not testify. *Smith I* at ¶ 101. "The purpose of body cameras is to record events in which law enforcement officers are involved to improve officer safety, increase evidence quality, reduce civilian complaints and reduce agency liability . . . not to supplant the in-court testimony of a witness." *Smith I* at ¶ 94. In the analysis section of *Smith I*, this court did not differentiate between B.B.'s statements to police and her statements to EMTs and indeed did not discuss the statements made to EMTs at all.

{¶ 21} This court further found that the improperly admitted evidence was prejudicial because it affected Smith's substantial rights. *Id.* at ¶ 105. Specifically, the *Smith I* Court found that, taking out of consideration the Video, the remaining evidence presented by the State was insufficient to support Smith's convictions. "In this case, the improperly admitted evidence was clearly prejudicial, linking Smith to the crimes for which he was ultimately convicted." *Smith I* at ¶ 107.

{¶ 22} This court found Smith's second assignment of error, which concerned the admissibility of the Video as hearsay, moot and did not review this issue.

## II. Trial Testimony and Evidence

{¶ 23} The following testimony and evidence were presented at Smith's trial concerning the March 21, 2020 incident at issue in this appeal. We note that the bulk of testimony and evidence at this trial concerned the December incident, which is not at issue in this appeal.

### A. Detective Cunningham

{¶ 24} Cleveland Police Detective William Cunningham ("Cunningham") testified that he investigated the assault of B.B. on March 21, 2020. Cunningham called B.B. three times but did not speak with her about "her version of what happened."[1]

---

[1] Cunningham testified that he spoke with a woman on March 22, 2020, who told him he called the wrong number. According to Cunningham, this woman was B.B.

{¶ 25} Asked what the nature of the case was, Cunningham testified that B.B. "was five months pregnant, I believe, and she was assaulted by her person, the male, the man she said she was pregnant by." Defense counsel objected to this testimony, and the court overruled the objection. Cunningham testified that the police report led him to believe that "the man [B.B.] said she was pregnant by" assaulted her. We note that there are no police reports in the record, and the State did not attempt to introduce any police reports at trial and reiterate our prior finding that Cunningham *never* spoke with B.B.

{¶ 26} Cunningham testified about photographs of B.B.'s injuries from the March 2020 incident, which were taken at the hospital, but not by him. Again, we note that Cunningham never spoke with, or saw, B.B. so his ability to testify as to those photographs is suspect. Cunningham also obtained B.B.'s medical records from her hospital visit, via a search warrant, as well as Smith's prior criminal history which consisted of a 2012 conviction for domestic violence. The State asked Cunningham if the exhibit consisting of B.B.'s medical records from the March 21, 2020 hospital visit "fairly and accurately portray the medical records that [he] received in this case" to which Cunningham responded, "Yes." There was no other testimony at trial concerning B.B.'s medical records.

**B. Chance Smith**

{¶ 27} Chance Smith ("Chance") testified that Smith is his uncle and Smith and B.B. have been together for "many years."

### C. Garry Smith

{¶ 28} Smith testified that he and B.B. have "been together since 2002" and they have eight children together. On March 21, 2020, he and B.B. were at a friend's house on Warner Road when B.B. "got into it with a girl that she thought I was cheating with . . . ." According to Smith, he did not get into a fight with B.B. that day nor did he hit B.B. Smith left the house that night but B.B. stayed. Smith testified that, at the time he left, B.B. "was fine. Everybody was down in the basement getting drunk." Smith further testified that B.B. was drinking alcohol that night.

{¶ 29} Smith testified that he spoke with B.B. while he was in jail pending trial in this case and B.B. told him she was not going to testify. B.B. also said, "I already told you you ain't did nothing." Smith further testified that B.B. "always call the police on me when she mad, that's what she do. . . . Yeah, because she always assume I'm cheating. That's all she say every time she drink, You're going out to cheat." The State did not object to Smith's testimony.

### D. Brian Soucek

{¶ 30} Soucek testified that he is a patrol officer for the Cleveland Division of Police and, on March 21, 2020, he and his partner responded to a call for "female assaulted" in Cleveland. When he and his partner arrived at the scene, "the female was already being escorted into the EMS wagon." Soucek began to interview B.B. about the incident and the interview was recorded on the Video. Soucek testified about the various injuries that were visible on B.B. in the Video.

{¶ 31} Over objection, Soucek testified that B.B. stated in the Video "that her fiancé assaulted her and also ripped out her hair." In *Smith II*, the Ohio Supreme Court ruled that B.B.'s statements to Soucek were inadmissible at trial as violating the Confrontation Clause. *Smith II* at ¶ 53. Therefore, we disregard this testimony.

{¶ 32} Soucek further testified that he met B.B. at the hospital after the interview in the ambulance to take photographs of B.B.'s injuries. Soucek testified about B.B.'s injuries in these photographs. According to Soucek, while B.B. was receiving medical treatment at the hospital, "she did mention that he had a weapon on him and that he also assaulted her previous times, unsure if they were reported." Soucek did not testify as to who "he" was.

{¶ 33} On cross-examination, Soucek testified that the assault "took place on the street somewhere." Soucek did not recall how long after the incident occurred that he and his partner arrived to where B.B. was getting into the ambulance, although he stated that "[u]sually, it's a few minutes." According to Soucek, B.B. "went down to her aunt's house to call for help" after she was assaulted.

### E. The Video

{¶ 34} The following is our transcription of what B.B. said to the EMTs on March 21, 2020. We note that two EMTs were present in the ambulance. Both EMTs were wearing Covid-19 face masks and this transcript cannot, and does not, distinguish between the two speakers. We also note that Soucek and his partner are not seen in the Video, but what is presumably their voices are heard asking B.B. questions. Additionally, the four speakers, all males asking questions of B.B., often

speak over each other. Therefore, it is not possible to identify the speakers with certainty. This transcript does not include questions and answers between the two police officers and B.B. (which the Ohio Supreme Court ruled inadmissible in *Smith II*) nor does it include statements made by the EMTs and questions posed by the EMTs that went unanswered by B.B.

EMT: Who is this? Is this your niece here? She said you're five months pregnant? Does that sound about right? Did you take any kicks or punches to the stomach?

BB: I took kicks to my knee, to my chest, to my stomach. I no longer feel my baby moving.

EMT: In front of this house here?

BB: It happened there down the street.

EMT: Did he rip your hair out right here?

BB: Yes, he did.

EMT: What insurance do you have?

BB: Medicaid.

EMT: Do you know what the due date is?

BB: July 27.

EMT: Ma'am, I know you said you were smoking (indecipherable), drinking.

Unknown speaker: SHHHH!

Unknown speaker: Shhhh.

EMT: But did you do anything else? Huh? You do any drugs or anything – what did you do?

BB:  I snorted cocaine.  When he beat me up, I snorted a couple lines of cocaine.

EMT:  Okay.  Just because your heart rate is really high that's all.

EMT:  How many babies do you have?

BB:  This is number six.

EMT:  Six total times or did you have any miscarriages or anything?

BB:  No miscarriages.

EMT:  And you're feeling no movement from the baby?

BB: No movement.  And it was moving until this incident.  Now there's absolutely no movement.  I just want to know if the baby's heart is still beating.

## III.  Law and Analysis

### A. Hearsay

### 1. Standard of Review

{¶ 35} Although evidentiary issues are typically reviewed under an abuse-of-discretion standard, the admissibility of hearsay is reviewed under a de novo standard.  This is because, "[w]hile there is discretion to admit or exclude relevant evidence, there is no 'discretion' to admit hearsay."  *State v. Richcreek*, 2011-Ohio-4686, ¶ 29 (6th Dist.).  "On appeal, challenged hearsay is subject to de novo review under the applicable hearsay rule, rather than the more deferential review employed for discretionary rulings."  *Id.* at ¶ 32.  *See also Bromall v. Select Specials*, 2022-Ohio-2496, ¶ 36 (citing *Richcreek* with approval).

## 2. Exceptions to the Rule Against Hearsay

{¶ 36} Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted in the statement." Evid.R. 801(B). Generally, hearsay is inadmissible at trial. Evid.R. 802. Historically, the purpose behind the rule against hearsay is "to exclude statements of dubious reliability that cannot be tested by cross-examination." *State v. Yarbrough*, 2002-Ohio-2126, ¶ 70.

{¶ 37} Evid.R. 803 governs the exceptions to the rule against hearsay and permits hearsay at trial under certain circumstances. In this case, the first four sections of the rule were raised in some fashion either in the trial court, on appeal, in *Smith I* or in *Smith II*.

> (1) Present sense impression. A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter unless circumstances indicate lack of trustworthiness.

> (2) Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

> (3) Then existing, mental, emotional, or physical condition. A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

> (4) Statements for purposes of medical diagnosis or treatment. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or

external source thereof insofar as reasonably pertinent to diagnosis or treatment.

### 3. Domestic Violence

{¶ 38} Pursuant to R.C. 2919.25(A), "No person shall knowingly cause or attempt to cause physical harm to a family or household member." Inherent within this statute is that the defendant's identity must be established. "The prosecution [is] required to prove the identity of the perpetrator beyond a reasonable doubt." *State v. Cook*, 65 Ohio St.3d 516, 526 (1992). *See also State v. Burnett*, 2025-Ohio-1836, ¶ 32 (8th Dist.) ("Like any other element of an offense, identity must be proved by the State and may be established through direct or circumstantial evidence."); *State v. Johnson*, 2014-Ohio-1226, ¶ 27 (7th Dist.) ("It is well settled that in order to support a conviction, the evidence must establish beyond a reasonable doubt the identity of the defendant as the person who actually committed the crime at issue.").

### 4. Analysis

{¶ 39} Although the Ohio Supreme Court in *Smith II* declined "to address admissibility issues pertaining to B.B.'s statements under the Ohio Rules of Evidence," it concluded in its Confrontation Clause analysis that "[e]very statement B.B. made in response to the EMTs' questions was for the primary purpose of receiving medical care, not creating a record for use at trial." *Smith II* at ¶ 55. We note that the medical treatment or diagnosis exception to the hearsay rule was not argued by the parties in the trial court, the trial court did not rule on this exception and this exception was not argued on appeal nor was it addressed by this court in *Smith I*.

{¶ 40} Taking the Ohio Supreme Court's finding into consideration, we do not see how we could conclude anything but that B.B.'s statements to the EMTs were admissible under Evid.R. 803(4), which governs statements made for the purpose of medical diagnosis or treatment. We see no difference between "receiving medical care" and medical treatment or diagnosis. Furthermore, we understand that the Ohio Supreme Court was not analyzing the rules against hearsay when it summarily concluded that B.B.'s statements to the EMTs were "for the primary purpose of receiving medical care." Nonetheless, the purpose behind why someone said something should not change depending on which legal theory is advanced during legal proceedings.

{¶ 41} Additionally, our de novo review of B.B.'s statements made to the EMTs and captured on the Video demonstrates that her statements were made for the purpose of medical treatment or diagnosis. Therefore, we find no error based on hearsay in the trial court's admission of that portion of the video during which B.B. responds to the EMTs' inquiries.

{¶ 42} We were next instructed on remand to revisit our harmless-error determination in *Smith I*. In *Smith I*, we essentially found that the State's evidence, other than the Video, was insufficient to identify Smith as the person who assaulted B.B. on March 21, 2020. Specifically, we found that the properly admitted evidence that went toward the elements of domestic violence included evidence of B.B.'s injuries and Smith's testimony. Now, on remand, we include as properly admitted evidence the statements made by B.B. to the EMTs that were captured on the Video.

{¶ 43} As previously noted, these statements were made for the purpose of B.B.'s medical treatment. As to the elements of domestic violence, of which Smith was convicted in this case, these statements certainly go toward proving B.B.'s injuries. B.B. clearly sustained injuries, this is not in dispute. However, nothing in B.B.'s statements to the EMTs concerns who inflicted the injuries on B.B.

{¶ 44} In other words, we stand by our original harmless-error analysis and conclude that the improperly admitted evidence of B.B.'s statements to police officers was not harmless error, Smith was prejudiced by the admission of the Video because it contributed to his conviction and the remaining evidence does not establish Smith's guilt beyond a reasonable doubt. *See Smith I* at ¶ 102-109.

{¶ 45} The only evidence in the record identifying Smith as the person who assaulted B.B. are her out-of-court statements, which were made while she was under the influence of drugs and alcohol. The statements B.B. made to the police for investigative purposes were deemed inadmissible in *Smith I* and *Smith II*. The statements B.B. made to the EMTs are admissible hearsay, but they do not establish the identity of the person who assaulted her on March 21, 2020.

{¶ 46} We are aware that Cunningham testified that, according to a police report which is not part of the record in this case, B.B. said she was assaulted by "the man she said she was pregnant by." Additionally, B.B.'s medical records, which contained Cunningham's search warrant affidavit, were admitted into evidence although there is no testimony about these records. Within the medical records and

search warrant affidavit are B.B.'s out-of-court statements identifying Smith as the person who assaulted her.

{¶ 47} We understand that the admissibility of Cunningham's testimony and the medical records, including the search warrant affidavit, is not at issue in this case. However, out-of-court statements are inherently unreliable unless they fall under an exception to the rule against hearsay or contain indicia of reliability under other legal theories not at issue in this remand.

> The hearsay rule, which has long been recognized and respected by virtually every State, is based on experience and grounded in the notion that untrustworthy evidence should not be presented to the triers of fact. Out-of-court statements are traditionally excluded because they lack the conventional indicia of reliability: they are usually not made under oath or other circumstances that impress the speaker with the solemnity of his statements; the declarant's word is not subject to cross-examination; and he is not available in order that his demeanor and credibility may be assessed by the jury.

*Chambers v. Mississippi*, 410 U.S. 284, 298 (1973). *See also State v. Madrigal*, 87 Ohio St.3d 378, 385 (2000), quoting *Ohio v. Roberts*, 448 U.S. 56, 66 (1980) ("Hearsay statements are deemed sufficiently reliable to allow their admission without the benefit of cross-examination when the statements (1) 'fall within a firmly rooted hearsay exception,' or (2) contain 'adequate indicia of reliability.'").

{¶ 48} As to Cunningham's testimony about B.B.'s out-of-court statement, we cannot assess its reliability because we do not know the circumstances surrounding the statement. Cunningham referenced the police report when asked about his testimony. No police reports are part of the record in these cases.

{¶ 49} As to the medical records, "[a]bsent some evidence that the identity of the perpetrator is necessary for medical purposes, statements identifying an assailant are not properly admitted pursuant to Evid.R. 803(4) . . . . [H]earsay statements in medical records could not come in under the business records exception in Evid.R. 803(6) unless they had an independent basis for their admission. *See* Staff Notes to Evid.R. 803(6)." (Cleaned up.) *State v. Smith*, 2008-Ohio-5985, ¶ 38 (8th Dist.).

{¶ 50} As to the search warrant affidavit, the Ohio Supreme Court has held that probable cause, which is the standard used to issue a search warrant, is a lower quantum of proof than "[f]inely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials . . . ." *State v. George*, 45 Ohio St.3d 325, 329 (1989). "[O]nly the probability, and not a prima facie showing, of criminal activity is the standard of probable cause." (Cleaned up.) *Id.* Additionally, pursuant to Crim.R. 41(C)(2) and in conjunction with a search warrant, the "finding of probable cause may be based upon hearsay in whole or in part, provided there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished."

{¶ 51} We are aware of no case in Ohio in which the State has attempted to use a search warrant affidavit to prove an element of a criminal offense at trial. Given the lower standard of proof and the allowance of hearsay, we find search

warrant affidavits, standing alone, insufficient to prove an element of a crime beyond a reasonable doubt.

{¶ 52} Upon review of this remaining evidence, we find it unreliable, not credible and, ultimately, not enough to sustain Smith's convictions. The admissibility of the Video was prejudicial because, without this evidence, the State failed to prove beyond a reasonable doubt that Smith was the person who assaulted B.B.

{¶ 53} Smith's second assignment of error concerning hearsay is overruled. Smith's first assignment of error, which challenges the admissibility of the Video under the Confrontation Clause, is sustained.

{¶ 54} Smith's remaining assignments of error are rendered moot pursuant to App.R. 12(A)(1)c. The trial court's judgment in CR-20-651674 is reversed, Smith's convictions in that case are vacated and this case is remanded for a new trial.

{¶ 55} Judgment reversed, vacated, and case remanded.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_(signature)_

EILEEN A. GALLAGHER, PRESIDING JUDGE

WILLIAM J. KLATT, J.,* CONCURS;
MICHELLE J. SHEEHAN, A.J., CONCURS IN JUDGMENT ONLY (WITH SEPARATE OPINION)

(*Sitting by assignment: William A. Klatt, J., retired, of the Tenth District Court of Appeals.)

MICHELLE J. SHEEHAN, A.J., CONCURRING IN JUDGMENT ONLY:

{¶ 56} Respectfully, I concur in judgment only.

{¶ 57} I agree with the majority's conclusion that without B.B.'s statements to Officer Soucek identifying Smith as the person who attacked her on March 21, 2020, the remaining evidence is insufficient to identify Smith as the perpetrator. As such, it cannot be said that the trial court's admission of these identifying statements was harmless.

{¶ 58} Where I part ways with the majority is that I do not believe it is necessary or proper to address evidentiary issues not raised by either party in our harmless-error review. In conducting our review, we are guided by the principle that "an error in admitting evidence may be deemed harmless beyond a reasonable doubt if when the improperly admitted evidence is excised, the remaining evidence provides overwhelming proof of the defendant's guilt." *State v. Roberts*, 2025-Ohio-

5120, ¶ 138, citing *State v. Morris*, 2014-Ohio-5052, ¶ 32. But in doing so, we should not seek to exclude evidence in the record based on evidentiary and reliability issues neither party raised. Majority Opinion at ¶ 52. *See Snyder v. Old World Classics, L.L.C.*, 2025-Ohio-1875, ¶ 4, ("'[O]ur judicial system relies on the principle of party presentation, and courts should ordinarily decide cases based on issues raised by the parties.'"), quoting *Epcon Communities Franchising, L.L.C. v. Wilcox Dev. Group, L.L.C.*, 2024-Ohio-4989, ¶ 15.

{¶ 59} For these reasons, I respectfully concur in judgment only.