[Cite as *State v. Andrews*, 2026-Ohio-1861.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                     :

    Plaintiff-Appellee,        :

                               No. 115160

    v.                         :

CALVIN ANDREWS,                    :

    Defendant-Appellant.       :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED, VACATED, AND REMANDED
**RELEASED AND JOURNALIZED:** May 21, 2026

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-24-689109-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Omar Siddiq, Assistant Prosecuting Attorney, *for appellee*.

Michael P. Maloney, *for appellant*.

ANITA LASTER MAYS, J.:

{¶ 1} Defendant-appellant Calvin Andrews ("Andrews") appeals his convictions and asks this court to vacate. We reverse the trial court's judgment, vacate Andrews's convictions, and remand to the trial court for a new trial.

{¶ 2} Andrews was charged with rape, a first-degree felony, in violation of R.C. 2907.02(A); felonious assault, a second-degree felony, in violation of R.C. 2903.11(A)(1); strangulation, a fifth-degree felony, in violation of R.C. 2903.18(B)(3); kidnapping, a first-degree felony, in violation of R.C. 2905.01(A)(3); and abduction, a third-degree felony, in violation of R.C. 2905.02(A)(2). Count 1 and 2 both included prior conviction specifications under R.C. 2929.13(F)(6). Andrews pleaded not guilty, and his case proceeded to trial. After a jury trial, Andrews was found guilty of felonious assault, strangulation, and abduction. He was sentenced to a total of 16 to 20 years in prison.

## I. Facts and Procedural History

{¶ 3} On February 3 and 4, 2024, the Brooklyn police responded to a call from the victim C.G.'s brother who stated that his sister had a domestic-violence incident and needed help. Upon arrival at the hotel, where C.G. and Andrews were staying, C.G. answered the door. Upon viewing C.G., officers recognized that some sort of assault had taken place. Tr. 397. The officers observed Andrews sleeping on the couch and that the room was in disarray. After speaking to C.G., the officers arrested Andrews, and C.G. was taken to the hospital. At the hospital, C.G. was interviewed by the officers, and her account of the events was recorded on the officer's body camera. In the recording, C.G. described how Andrews beat and sexually assaulted her. C.G. also signed a written statement written by one of the officers.

{¶ 4} Before trial, the State filed a notice of intent to seek admission of the body-camera footage, a letter Andrews wrote C.G., and four jailhouse calls under Evid.R. 804(B)(6), arguing that C.G. failed to appear for trial despite being subpoenaed. Andrews objected and argued that C.G. never wanted to be a party to this case. He argued that at the time of the offense, C.G. told the police that she did not want to be a victim and did not want to go to court. Andrews also noted that the letter he wrote C.G. was never delivered to her as a police officer intercepted the letter. Additionally, Andrews argued that the phone calls from Andrews to C.G. were collect calls, which C.G. accepted where she stated to Andrews that he did not think she would testify. The trial court held a hearing on September 30, 2024, and the State introduced evidence that Andrews made around 37 phone calls to the victim. However, despite Andrews's arguments, the trial court granted the State's request.

{¶ 5} The trial court stated, in its ruling, as follows:

It is true the alleged victim showed some resistance to the defendant's urging. But I agree with the prosecution it's not unreasonable she might further considered the more than three dozen calls from the jail and especially given the lengthy relationship between the parties it is not unduly speculative to think that over time she thought things through and has taken steps in direct response, although perhaps delayed, to defendant's urging to remove herself from the reach of the court.

Accordingly, I am persuaded by the state's argument. I acknowledge its notice and will grant permission consistent with Evidence Rule 804(B)(6) to introduce the evidence that it seeks to do. Consistent with that ruling the defense motion in limine is hereby denied.

Tr. 35-36.

{¶ 6} Andrews moved for a Crim.R. 29 motion for acquittal at the end of the State's case. He argued that the evidence was not sufficient to find him guilty of the charges. He also argued that the body-camera footage should not be entered into evidence because C.G.'s testimony because C.G. did not show up to testify at trial. The trial court dismissed Andrews's motion. At the conclusion of the trial, Andrews was found guilty of felonious assault, strangulation, and abduction, but acquitted on rape and kidnapping.

{¶ 7} Andrews filed this appeal, assigning two errors for our review:

1. The trial court erred in denying appellant's rule 29 motion as to counts two, three, and five, where the state presented insufficient evidence on the elements of felonious assault, strangulation and abduction; and

2. The trial court erred in admitting the victim's out of court statements in violation of confrontation clause of the United States Constitution, the Ohio Constitution, Section 10, Article 1, and Ohio Rule of Evidence 802.

{¶ 8} We will address the second assignment of error first because it is dispositive to the appeal. *State v. Oatneal*, 2025-Ohio-2357, ¶ 28 (2d Dist.).

## II. Confrontation Clause

### A. Standard of Review

{¶ 9} An appellate court reviews de novo the question of law regarding an alleged Confrontation Clause violation, hearsay, and the admissibility of a victim's statements through body-camera footage. *See State v. Russell*, 2025-Ohio-5311, ¶ 20 (5th Dist.).

### B. Law and Analysis

{¶ 10} In Andrews's second assignment of error, he argues that the trial court erred when admitting C.G.'s statements recorded on the officer's body camera thereby violating his right to confront C.G. in court. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." In *Crawford v. Washington*, 541 U.S. 36, 59 (2004), the United States Supreme Court explained that the key question for determining whether a Confrontation Clause violation has occurred is whether an out-of-court statement is "testimonial." If a statement is testimonial, its admission into evidence will violate the defendant's right to confrontation if the defendant does not have an opportunity to cross-examine the declarant. *Id.* at 53-56. Further, "the admission of a testimonial out-of-court statement of a witness who does not appear at trial violates the Confrontation Clause unless the witness is unavailable to testify and the defendant had a prior opportunity to cross-examine the witness." *State v. Barnes*, 2020-Ohio-3184, ¶ 14 (8th Dist.).

{¶ 11} "To determine whether a statement is testimonial, courts must look to post-Crawford decisions to ascertain whether the statement bears indicia of certain factors that would make it testimonial." *State v. Wilcox*, 2024-Ohio-5719, ¶ 11. "For example, the primary purpose of a testimonial statement is to create an out-of-court substitute for trial testimony." *Id.*, citing *Ohio v. Clark*, 576 U.S. 237, 245 (2015). "That primary purpose must be measured objectively by the trial court, accounting for the perspectives of the interrogator and the declarant." *Id.*, citing

*Michigan v. Bryant*, 562 U.S. 344, 367-368 (2011). "Also important to consider is whether the statement was made during an ongoing emergency, i.e., whether there was a continuing threat to the victim." *Id.*, citing *id.* at 363-365.

{¶ 12} However, C.G.'s statements made to the officers at the hospital were not made during an ongoing emergency nor were the statements a cry for help or information that enabled officers to immediately end a threatening situation. The statements were given to establish events that occurred previously at the motel. Additionally, Andrews was already in custody, there were no other perpetrators, and there was not a continuing threat to C.G. Thus, C.G.'s statements captured on the officer's body camera are considered testimonial. *Id.* at ¶ 12.

{¶ 13} The State sent a subpoena to C.G. to appear on September 9, 2024, and she did not appear. C.G. had also failed to appear at a previously scheduled trial on August 7, 2024, which prompted the State to ask for a continuance. C.G. had not returned any calls from either the State or from the victims' advocate from the rape crisis center. Physical mail was sent to C.G.'s address and was returned as undeliverable. The State argued that Andrews threatened C.G. and she was intimidated not to appear at trial. The trial court agreed with the State's argument and admitted the body-camera footage and jailhouse phone calls under Evid.R. 804(B)(6).

{¶ 14} Evid.R. 804(B)(6) establishes as a hearsay exception:

A statement offered against a party if the unavailability of the witness is due to the wrongdoing of the party for the purpose of preventing the witness from attending or testifying  However, a statement is not

admissible under this rule unless the proponent has given to each adverse party advance written notice of an intention to introduce the statement sufficient to provide the adverse party a fair opportunity to contest the admissibility of the statement.

{¶ 15} "To qualify for this exception, the state must show by a preponderance of the evidence that (1) the defendant's wrongdoing resulted in the witness's unavailability; and (2) 'one purpose was to cause the witness to be unavailable at trial.'" *State v. Blade*, 2023-Ohio-3054, ¶ 39 (8th Dist.), quoting *State v. Hand*, 2006-Ohio-18, ¶ 84.

{¶ 16} "To establish that a witness is unavailable for purposes of Evid.R. 804(A)(5) (modified for our analysis and again, to provide guidance), the proponent must show that he or she has been 'unable to procure' the witness's attendance 'by process or other reasonable means.'" *State v. Kehoe*, 2018-Ohio-3589, ¶ 22 (8th Dist.). "The Ohio Supreme Court has held that in order for the witness to be 'shown to be unavailable,' there 'must also be shown a good faith effort to secure the witness[.]'" *Id.*, quoting *State v. Jester*, 32 Ohio St.3d 147, 154 (1987). "'[M]ere statements that a search has been made lack sufficient particularity to allow the court to determine what steps have been taken and whether they were reasonable.'" *Id.*, quoting *State v. Jackson*, 2012-Ohio-2335, ¶ 50 (2d Dist.).

{¶ 17} The State explained to the trial court about its efforts to contact C.G., stating:

> Your Honor, we were set for trial today. The victim failed to appear today. I did send her a subpoena for today's date. We were previously set for trial. She failed to appear at the last trial as well. That caused

the state to ask for a continuance at that time in order to get the victim present.

The victim has not returned phone calls since that last trial date to neither myself nor to the victim advocate from the rape crisis center who was in regular contact with her. Mail has come back as not deliverable. At this point I believe she may have had moved her address and certainly is being nonresponsive. The state has made multiple attempts to try and contact her without success.

. . .

We had previously sent out an investigator. Not since the last trial date.

Tr. 24-25.

{¶ 18} Andrews's trial counsel argued, in return, that

[n]ow, the state claims, you know, that the alleged victim failed to appear at her August 7th trial. Their argument is that her failing to appear is due to the defendant's wrongdoing.

I don't believe that's accurate at all. We were set, I believe it was on the 7th. The victim, state — the victim didn't subpoena the victim [sic] for the date of trial. She was subpoenaed for day after, your honor. So her not showing up, she wasn't told. And why that's important, because the statute that the state is requesting this evidence come in under, 804(B)(6), before you get there, I believe the case law is the court has to — the state has to comply with 804(A)(5). And what that is is that it requires a showing that the state, either by process or by reasonable means, or that reasonable means were made to secure the witness, witness's presence. She didn't show at trial because she didn't know to be there and the trial date, and quite frankly everyday procedures for every trial as far as I've been in the building is that witnesses, victims, the courts require their presence on the day of trial through subpoena. So since she is not subpoenaed then you can't ask for a material witness warrant. It wasn't asked for by the State of Ohio in this case. And so while I believe the state's claims about this wrongdoing I believe that is pure speculation, but what we do know is she is not here due to the efforts of the state.

Tr. 29-31.

{¶ 19} The State has demonstrated that they were unable to produce C.G. for any proceedings as a witness although they subpoenaed her and sent an investigator to her home. C.G. stopped accepting and returning the State's calls and mail to her address was returned Andrews contends that the State offered no sworn testimony on the issue of availability of C.G. at the September 30, 2024 hearing. He further argues that the prosecutor simply recited facts and legal argument in support of the State's position that the victim was not available. He also contends that the State did not offer any such testimony once the trial started. "A record showing that subpoenas were issued unsuccessfully, without sworn testimony, is insufficient to demonstrate the unavailability of the witness." *Napier v. Watkins*, 2004-Ohio-4685, ¶ 21 (2d Dist.), citing *State v. Keairns*, 9 Ohio St.3d 228, 232 (1984). *See also Karst v. Goldberg*, 88 Ohio App.3d 413, 422 (4th Dist. 1993). Thus, Andrews's contentions are well taken.

{¶ 20} Next, the State must demonstrate that Andrews's actions resulted in C.G.'s unavailability. The State admitted four jailhouse phone calls to demonstrate that Andrews's conversations with C.G. caused her to not appear at the trial. Andrews's trial counsel argued, in return:

> You know, Judge, as far as the — as far as the phone calls if you are going to listen to the CD, the alleged victim is completely unpersuaded by what the defendant has to say to her. These are some collect calls from the jail and these two aren't strangers, these two, my client and the alleged victim, they've known — been in sort of relationship for 20 to 25 years. They have children together. The alleged victims are paying for — she is playing for the calls. And when you listen to the calls you are going to hear the alleged victim say things to him repeatedly that he is dum [sic] to think that she wouldn't appear. He's

a fool to think that she wouldn't tell the police. She tells him you got attitude with the wrong person. She says, I ain't dropping nothing. Because they — as in, the state — can threaten me with contempt.

All of the defendant's calls are completely unsuccessful into her changing her story. These calls, the last ones referred to in the motion by the state goes to June 14th, just under two months prior to trial. There's no indication from the state in their motion that conversations continued.

Tr. 31-32.

{¶ 21} Andrews cited *State v. Blade*, 2023-Ohio-3054 (8th Dist.), to support his contention that the State failed to draw a nexus between Andrews's actions and C.G.'s failure to appear at trial and testify. In *Blade*, the defendant called one of the witnesses 171 times in order to dissuade her from testifying against him. The court held that even though the defendant did not threaten the witness, his excessive calling could have caused her to decide not to testify, and thus, the defendant's conduct was responsible for the witness's failure to appear. *Id.* at ¶ 52-53.

{¶ 22} The facts in our instant case are distinguishable from the facts in *Blade*. The State only offered four calls where Andrews asked C.G. not to testify. The calls demonstrate that C.G. was not moved by Andrews's request. Whereas in *Blade*, the defendant made 171 calls to the witness over a period of several months and even contacted a third-party to persuade the witness not to testify. Andrews did not threaten C.G. nor did the State show by a preponderance of the evidence that Andrews's wrongdoing resulted in the C.G.'s unavailability. Therefore, the trial court erred in admitting the body-camera footage of C.G.'s statements at trial because C.G.'s statements were testimonial.

{¶ 23} After conducting our de novo review of the record, "we do not agree with the trial court that the body-camera footage from the hospital was admissible in this case because it is both hearsay with no exception established by the State and because it is in violation of the Confrontation Clause." *State v. Parker*, 2023-Ohio-2722, ¶ 14 (3d Dist.). *See State v. Smith*, 2019-Ohio-3257 (1st Dist.) (holding that body-camera footage was inadmissible under the Confrontation Clause where witness did not testify at trial and there was no ongoing emergency).

{¶ 24} "However, this does not end our analysis because Confrontation Clause issues (and hearsay issues) are subject to harmless error review." *Parker* at ¶ 14, citing *State v. McKelton*, 2016-Ohio-5735; *State v. Thomas*, 2020-Ohio-5379, ¶ 27 (3d Dist.).

> Harmless error review requires: 1) that the defendant was prejudiced by the admission of the improper evidence at trial, 2) that the appellate court believes that the error was "not harmless beyond a reasonable doubt," and 3) that after excising the improper evidence, the remaining evidence overwhelmingly supports finding the defendant guilty.

*Id.*, citing *State v. Morris*, 2014-Ohio-5052, ¶ 27-29.

{¶ 25} Andrews was prejudiced by the admission of the body-camera footage because he could not cross-examine the victim. The only evidence supporting his convictions were contained in the inadmissible video. The pictures admitted into evidence did not demonstrate that Andrews caused C.G.'s injuries. Having determined that the admission of the video violated the Confrontation Clause, we agree with Andrews that his conviction was supported by insufficient evidence. *See Oatneal*, 2025-Ohio-2357, ¶ 31 (2d Dist.). *See also State v. Smith*, 2026-Ohio-552,

¶ 52-55 (8th Dist.) (The appellate court held that the admissibility of a video of the victim's statements, where the victim did not testify at trial, violated the Confrontation Clause. Further, the court found that the remaining evidence was not enough to sustain the appellant's conviction and reversed the trial court's judgments, vacated his convictions, and remanded for a new trial.).

{¶ 26} Therefore, Andrews's second assignment of error is sustained.

{¶ 27} Because we find merit to Andrews's second assignment of error and determine that it is dispositive of the appeal, Andrews's first assignment of error also challenging the trial court's judgment is rendered moot. App.R. 12(A)(1)(c).

{¶ 28} Judgment reversed, vacated, and remanded for a new trial.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

MARY J. BOYLE, J., CONCURS IN JUDGMENT ONLY;
LISA B. FORBES, P.J., CONCURS IN PART AND CONCURS IN JUDGMENT ONLY IN PART (WITH SEPARATE OPINION)

LISA B. FORBES, P.J., CONCURRING IN PART AND CONCURRING IN JUDGMENT ONLY IN PART:

{¶ 29} Respectfully, I concur in judgment only with the majority's resolution of assignment of error No. 2. I write separately to explain why.

{¶ 30} Courts across Ohio have recognized that, as noted by the majority, under Evid.R. 804(B)(6), "the State must show by a preponderance of the evidence that (1) the defendant's wrongdoing resulted in the witness's unavailability; and (2) 'one purpose was to cause the witness to be unavailable at trial.'" *State v. Blade*, 2023-Ohio-3045, ¶ 39 (8th Dist.), quoting *State v. Hand,* 2006-Ohio-18, ¶ 84.

{¶ 31} The Ohio Supreme Court has long held that, for purposes of Evid.R. 804, "the evidence of unavailability 'must be based on the personal knowledge of witnesses rather than upon hearsay not under oath, at least when unavailability has not been clearly conceded by defendant.'" *State v. Keairns*, 9 Ohio St.3d 228, 232 (1984), quoting *State v. Smith,* 58 Ohio St.2d 344, 348 (1979); *accord State v. Jackson*, 2000 Ohio App. LEXIS 1741, * 25-26 (8th Dist. Apr. 20, 2000). In *Keairns*, the prosecution offered no sworn testimony of its efforts to find the witness, instead resting on the prosecutor's statements that a subpoena had been issued and the witness had not appeared for trial and that the prosecution had requested the sheriff search for the witness. The Court concluded, "[T]he record contains no testimony regarding unavailability and fails to disclose with particularity what steps were taken . . . . The evidence of record is insufficient to establish the showing of unavailability required by Evid.R. 804 or the Confrontation Clause."

{¶ 32} Here, as noted by the majority, Andrews argues that the State offered no sworn testimony in support of its argument to admit the officer's body-camera video. Like the majority, I agree. A review of the transcript reveals that, while the trial court heard argument of counsel on whether the State had undertaken reasonable efforts and Andrews's alleged wrongdoing, no sworn testimony was offered. Moreover, I would find that Appellant did not concede that C.G. was unavailable and did dispute that the State had undertaken reasonable efforts to secure her attendance.

{¶ 33} Unlike the majority, I would not end my analysis there. Instead would explain why I would, nevertheless, consider the State's arguments. Notably, courts throughout Ohio, including this court, have held that when a defendant fails to object on the grounds that the State has not demonstrated unavailability based on the personal knowledge of witnesses rather than upon hearsay not presented under oath as required by *Keairns*, that argument is forfeited. *State v. Finklea*, 2019-Ohio-2199, ¶ 6 (9th Dist.); *State v. Wright*, 2017-Ohio-1568, ¶ 24-27 (1st Dist.); *State v. Betts*, 2007-Ohio-5533, ¶ 43-44 (8th Dist.) (Although the State's evidence of unavailability was not provided under oath, the court noted that "defense counsel does not appear to have objected to the informal in chambers proceeding"; finding that the State did make reasonable good-faith efforts to secure the witness' appearance.). *See also State v. Smith,* 2020-Ohio-1026, ¶ 13 (8th Dist.) ("A party may not raise new issues or arguments for the first time on appeal."). Failure to raise this issue below forfeits all but plain error on appeal. *Finklea* at ¶ 7.

{¶ 34} Andrews did not object to the prosecutor presenting information concerning C.G.'s unavailability and the State's reasonable efforts to secure her appearance, or regarding Andrews's alleged wrongdoing, in the form of attorney argument rather than witness testimony under oath. As a result, I would find that Appellant forfeited the argument regarding sworn testimony on appeal. Moreover, I would find that Appellant did not argue, much less demonstrate, plain error and I would decline to construct a plain-error argument for him.

{¶ 35} In light of the foregoing, I would consider the parties' arguments notwithstanding the lack of sworn testimony. I agree with the majority that the trial court erred in finding forfeiture-by-wrongdoing, and I would sustain assignment of error No. 2.